INDEPENDENT EMPLOYEES' UNION OF HILLSHIRE FARM COMPANY, INC. and Lydia Tratz, Petitioners,

v.

HILLSHIRE FARM COMPANY, INC. and Neil M. Gundermann, Respondents.

No. 85–C–1394.

United States District Court, E.D. Wisconsin.

July 10, 1986.

Matkov, Griffin, Parsons, Salzman & Madoff by James J. Salzman and Jeffrey W. Byrd, Chicago, Ill., for petitioners.

Herrling, Clark, Hartzheim & Siddall by Roger W. Clark, Appleton, Wis., for respondents.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

When, in 1906, George M. Cohan composed "Forty-Five Minutes From Broadway" and the chorus of the stage show "1906" sang it to an enthralled audience on the New York stage, an enthusiastic nation of theatregoers hummed along. Since then the time span of forty-five minutes has probably not provoked such spirited attention until the instant dispute arose. An arbitrator, a state circuit court, and now this court have been called upon to decide whether forty-five minutes of overtime wages is due to Ms. Lydia Tratz. The total pay involved surely amounts to no more than ten dollars.

In August 1985, the Independent Employees' Union of Hillshire Farm Company (Union) and Lydia Tratz filed a petition in the circuit court for Outagamie County seeking an order vacating a portion of an arbitration award. One month later, upon petition of the respondent, Hillshire Farm Company (Company), the case was removed to this court. The Union has now moved this court for an order vacating a portion of the arbitrator's award. This motion will be granted.

## BACKGROUND

In accordance with section 5.07 of the parties' collective bargaining agreement and established procedure, Company employees who want overtime work on a particular day must sign an "overtime list" at the beginning of their shift. If overtime work is available at the end of their shift, the supervisor must offer such available work to employees who signed the overtime list in order of seniority.

On February 7, 1985, Lydia Tratz and Sue Giesen, an employee with less seniority than Ms. Tratz, were assigned overtime work at the end of their shifts. Upon completing their assignments, both Tratz and Giesen inquired of their supervisor as to the availability of additional overtime work. They were informed that no additional work was available. Accordingly, Ms. Tratz punched out and went home.

Ms. Giesen, however, spotted her husband in the plant; he was filling ink bottles. Ms. Giesen then again approached her supervisor and asked him if she could assist her husband in filling the bottles. The supervisor gave his permission and as a result Giesen worked an additional forty-five minutes of overtime.

The next day, when Ms. Tratz learned that Ms. Giesen had worked an extra forty-five minutes, she confronted her supervisor. The supervisor admitted that he had erred in permitting Giesen to work overtime without offering the work to Ms. Tratz first. In an attempt to correct his error, he offered Ms. Tratz forty-five minutes of make-up work at her overtime rate. Ms. Tratz refused, contending that she was entitled to forty-five minutes of overtime backpay as a result of the Company's misscheduled overtime assignment.

Up until the time of the incident that gave rise to the instant case, in cases of misscheduled overtime, the Company authorized make-up work in some instances and overtime backpay in others. However, on February 4, 1985, the Company's director of personnel notified the Union president by letter that effective February 10, 1985, the Company would eliminate backpay as a remedy for misscheduled overtime.

In the case of Lydia Tratz, the Company refused to pay forty-five minutes of backpay in lieu of make-up work; Ms. Tratz filed a grievance. This grievance was processed in accordance with the terms of the collective bargaining agreement and was properly brought before Arbitrator Neil M. Gundermann. After a hearing in May 1985, the arbitrator issued the following award:

> 1. The Company violated the practice in effect on February 7, 1985, by not compensating the grievant forty-five minutes at her overtime rate due to a violation of Section 5.07.
> 2. The Company is ordered to pay the grievant forty-five minutes pay at time and one-half.
> 3. The Company had the right to change its method of remedying violations of Section 5.07 effective February 10, 1985.

The Union now moves this court for an order vacating paragraph 3 of this award. It contends that the arbitrator, in arriving at paragraph 3, addressed an issue not put before him by the parties. It also urges that paragraph 3 does not "draw its essence" from the terms of the parties' collective bargaining agreement.

## ANALYSIS

■ The Union's contention that the arbitrator exceeded his scope of inquiry is not supported by the record. The record before me is replete with indications that the issues presented to the arbitrator were not limited to the particular facts surrounding Lydia Tratz's grievance. For instance, the Union's counsel, in summarizing the Un-

ion's position on the issue to be decided, did not refer to Lydia Tratz. At the arbitration hearing, Union's counsel asked the arbitrator to rule that "when the Company fails to follow the contract, the remedy is back pay for the employee involved." Transcript of Arbitration Proceedings, at 3. In light of this and many other references in the record, although he ultimately did not decide in favor of the Union on this issue, I am satisfied that the issue of the Company's general right to remedy section 5.07 violations was properly before the arbitrator.

Nevertheless, in consideration of the Union's other argument in support of its motion to vacate, I must grant the motion. There are narrowly delineated standards by which courts must review arbitrator's awards. The standard of review limits the court's inquiry to determining only whether the arbitrator's award "draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The Court of Appeals for the Seventh Circuit has repeatedly manifested its adherence to this narrow scope of review. *See, e.g., Grigoleit Co. v. United Rubber, Cork, Linoleum & Plastic Workers,* 769 F.2d 434 (7th Cir.1985); *Ethyl Corp. v. United Steelworkers,* 768 F.2d 180 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986).

■ While section 5.07 is silent with respect to the proper remedy for violations, the absence of an express provision does not necessarily preclude an arbitrator from devising an award which draws its essence from the collective bargaining agreement. "[C]ontracts have implied as well as express terms, and the authority of an arbitrator to interpret a collective bargaining contract includes the power to discover such terms." *Ethyl Corp, supra,* 768 F.2d at 186.

Where, as here, there is nothing expressed in the contract, in order to determine whether an arbitrator's award is validly derived from an implied provision, I

must consider "whether it is at all plausible to suppose that the remedy [devised by the arbitrator] was within the contemplation of the parties and hence implicitly authorized by the agreement." *Miller Brewing v. Brewery Workers*, 739 F.2d 1159, 1164 (7th Cir.1984). *See also Ethyl Corp., supra*, 768 F.2d at 185–86.

A consideration of paragraph 3 of the award currently at issue convinces me that it is "almost unimaginable" that the remedy devised was within the contemplation of the parties during negotiation of their collective bargaining agreement. *Accord, Miller Brewing, supra*, 739 F.2d at 1164 ("It is almost unimaginable that if the question had come up in the collective bargaining negotiations [the parties would have agreed to the award.]"). By allowing the elimination of backpay as a remedy for any section 5.07 violations, the arbitrator has effectively destroyed any incentive for the Company to comply with that provision of the collective bargaining agreement. Remedying violations with make-up work, rather than backpay, permits the Company to assign overtime work without regard for seniority and without fear of true retribution. The worst that could result, from the Company's perspective, from a section 5.07 violation would be "forcing" the Company to offer an aggrieved employee the opportunity to perform make-up overtime work when such work was available. This type of "remedy" does little to discourage section 5.07 violations and would likely not have been approved by the Union had the issue been discussed in negotiations.

> In its brief, the Company maintains that "... the remedy sanctioned by Arbitrator Gundermann clearly is not 'almost unimaginable.' It is eminently sensible and equitable that the Company be permitted to offer makeup work instead of back pay for inadvertent violations of section 5.07."
> Brief of Respondents, at 10.

This statement is plausibly true, but it does not address the issue of the scope of the arbitrator's authority to fashion awards. *See Miller Brewing, supra*, 739 F.2d at

1162–63 (indicating that an arbitrator is confined to interpreting the collective bargaining agreement rather than applying his own ideas of right and wrong). Moreover, the Company's characterization of paragraph 3 is inaccurate. The arbitrator did not sanction the company's change in remedy only with respect to *inadvertent* violations, such as the one in the Lydia Tratz grievance. The record indicates that the Company's change in policy is much more broad. Paragraph 3 permits the preclusion of backpay as a remedy to all misscheduled overtime assignments. Such wide application of the remedy for section 5.07 violations is indeed "unimaginable."

As devised by the arbitrator, paragraph 3 not only fails to draw its essence from any express or implied term of the parties' collective bargaining agreement, but it also violates a term of that agreement. Section 2.01 of the agreement recognizes the Union as the exclusive bargaining agent of the employees with respect to rates of pay, hours of work and conditions of employment; this provision applies specifically to rules regarding overtime pay and must take precedence over the provision cited by the Company as applicable to this case: section 8.06. Section 8.06 expressly provides that "any matter not specifically set forth herein remains within the reserved rights of the Company." The matter now before me, violations of a section relating to overtime pay, is an issue specifically covered by section 2.01. The Company is not entitled unilaterally to impose rules affecting rates of overtime pay. Accordingly, the arbitrator's award sanctioning such a rule cannot be enforced; the arbitrator simply failed to hum the correct tune.

Therefore, IT IS ORDERED that paragraph 3 of Arbitrator Gundermann's award be and hereby is vacated.