**INDEPENDENT EMPLOYEES' UNION OF HILLSHIRE FARM COMPANY, INC., and Lydia Tratz, Plaintiffs-Appellees,**

v.

**HILLSHIRE FARM COMPANY, INC., Defendant-Appellant.**

**No. 86–2323.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1987.

Decided July 29, 1987.

Jeffrey W. Byrd, Matkov, Griffin, Parsons, Salzman & Madoff, Chicago, Ill., for defendant-appellant.

Rachel Brickner, Herrling, Clark, Hartzheim & Siddall, Ltd., Appleton, Wis., for plaintiffs-appellees.

Before WOOD, COFFEY and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This dispute arose from Hillshire Farm Company, Inc.'s ("the Company") offer of a forty-five minute overtime work opportunity to an employee who had less seniority than employee Lydia Tratz. Tratz and the Independent Employees' Union of Hillshire Farm Company, Inc. ("the Union") brought suit in state court to set aside a portion of the ensuing arbitration award in favor of the Company. After removal of the case to federal court, the district court vacated part of the arbitration award. *Independent Employees' Union of Hillshire Farm Co. v. Hillshire Farm Co.*, 638 F.Supp. 1154 (E.D.Wis.1986). The Company appeals, and we reverse.

## I. FACTUAL BACKGROUND

The overtime policy articulated in section 5.07 of the collective bargaining agreement between the Company and the Union provides that supervisors must offer available overtime work to employees who have volunteered to work overtime in the order of the employees' seniority.[1] On February 7, 1985, Lydia Tratz and Sue Giesen, who had less seniority than Tratz, signed the Company's voluntary overtime list and both were offered overtime work at the end of their shifts. When they completed their overtime assignments, they asked the supervisor if additional work was available. The supervisor replied that none was available and Tratz punched out and went home. Giesen, however, spied her husband filling ink bottles, talked with him, and approached the supervisor to ask if she could assist her husband in filling the bottles. The supervisor gave his permission and as a result, Giesen worked an additional forty-five minutes of overtime.

---

1. Section 5.07 states in relevant part: "Overtime work not assigned to a specific bid job in a department will first be offered on a voluntary basis by seniority to departmental employees who are qualified by training and/or experience to perform the available work."

The next day, Tratz learned that Giesen had worked the additional overtime and confronted her supervisor. The supervisor said that Giesen had been granted additional overtime because Tratz had already gone home. He admitted, however, that he had erred in allowing Giesen to work the additional overtime without first offering it to Tratz. In an attempt to correct this error, the supervisor offered Tratz forty-five minutes of makeup work at her overtime rate. Tratz refused this offer, maintaining that she was entitled to forty-five minutes of overtime pay. Tratz likely was aware of Hillshire's past practice in remedying misscheduled overtime assignments, which was to authorize makeup work at an overtime rate in some instances and overtime pay in others. On February 4, 1985, however, three days before the erroneous assignment to Giesen, Hillshire's director of personnel notified the Union by letter that effective February 10, 1985, Hillshire would eliminate backpay as a remedy for misscheduled overtime.

Tratz and the Union (collectively for the purposes of this opinion "the Union") brought a grievance, which was submitted to Arbitrator Neil Gundermann in accordance with the terms of the collective bargaining agreement. After conducting a hearing, the arbitrator issued the following award:

1. The Company violated the practice in effect on February 7, 1985, by not compensating the grievant forty-five minutes at her overtime rate due to a violation of Section 5.07.
2. The Company is ordered to pay the grievant forty-five minutes pay at time and one-half.
3. The Company had the right to change its method of remedying violations of Section 5.07 effective February 10, 1985.

The Union filed suit in Wisconsin state circuit court to vacate paragraph 3 of the above award on grounds that it exceeded the scope of the grievance and failed to draw its essence from the collective bargaining agreement. Hillshire petitioned to remove the action to federal court under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), the petition was granted, and the district court vacated paragraph 3. *Independent Employees' Union of Hillshire Farm Co. v. Hillshire Farm Co.*, 638 F.Supp. 1154 (E.D.Wis.1986). The district court held that although paragraph 3 did not exceed the scope of the grievance, it did not draw its essence from any express or implied term of the collective bargaining agreement. In addition, the court held that paragraph 3 actually violated an express term of the collective bargaining agreement. The Company appeals.

## II. STANDARD OF REVIEW

In an appeal of a district court decision vacating a portion of an arbitration award, we consider whether the district court exceeded the permissible scope of its review. Our review of the district court's decision is *de novo*. The Union concedes that the scope of judicial review of arbitration awards is narrow. *See Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 183–84 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). Indeed it is "close to nonexistent" if the arbitrator "interprets" rather than "revises" the collective bargaining agreement. *Camacho v. Ritz-Carlton Water Tower*, 786 F.2d 242, 244 (7th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 3282, 91 L.Ed.2d 1 (1986). This extremely narrow standard of review recognizes that the parties to a collective bargaining agreement have bargained for arbitration as a dispute resolution process and fosters that process. *See Ethyl Corp.*, 768 F.2d at 183–84; *see also Camacho*, 786 F.2d at 244 (noting that "parties have bargained for non-judicial decisions and are entitled to rely on the decisions they receive"). The deferential standard "is essential to prevent a 'judicialization' of the arbitration process." *E.I. DuPont de Nemours and Co. v. Grasselli Employees Independent Association*, 790 F.2d 611, 614 (7th Cir.) (citing *Ethyl Corp.*, 768 F.2d at 184), *cert. denied*, — U.S. —, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986).

The Supreme Court has stated the scope of review: the arbitrator's award is enforceable "so long as it draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The phrase "draws its essence" is a broad concept. A court must affirm the award even if the court believes the arbitrator clearly misconstrued the agreement or the court strongly disagrees with the arbitrator's interpretation. *E.I. DuPont de Nemours*, 790 F.2d at 614, *International Union, UAW v. Keystone Consolidated Industries*, 782 F.2d 1400, 1402 (7th Cir.1986); *Ethyl Corp.*, 768 F.2d at 184. If the misinterpretation is "irrational," however, the court may reverse. *Gringoleit Co. v. United Rubber Workers, Local No. 270*, 769 F.2d 434, 439 (7th Cir.1985). "[A]ny reasonable doubt must be resolved in favor of enforcing the award," and "[i]t is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference, either ...) that the award can be said not to 'draw its essence from the collective bargaining agreement.'" *Ethyl Corp.*, 768 F.2d at 184–85 (emphasis in original) (citation omitted).

## III. DISCUSSION

Hillshire argues that by vacating paragraph 3 of the arbitration award, the district court overstepped the bounds of its extremely narrow scope of review in two respects. First, Hillshire maintains the court improperly found that paragraph 3 of the award fails to draw its essence from the collective bargaining agreement. Second, Hillshire contends that the court inappropriately determined that paragraph 3 violates an express term of the agreement.

*A. Paragraph 3 "Draws its Essence" from the Agreement*

Section 5.07 of the collective bargaining agreement, which provides that overtime shall be assigned according to seniority, does not expressly state any remedy for violations of its terms. The arbitrator found no other provision in the collective bargaining agreement regarding the appropriate remedy for a violation of section 5.07. This court in *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159 (7th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985), addressed the appropriate role of a reviewing court in determining whether an arbitral remedy that is not explicitly set forth in the collective bargaining agreement draws its essence from that agreement. We noted:

> Collective bargaining agreements often say little or nothing about the arbitrator's remedial powers; yet it cannot be that he has none; and since he derives all his powers from the agreement, the agreement must implicitly grant him remedial powers when there is no explicit grant.... This clearly is the Supreme Court's view.

*Id.* at 1163 (citations omitted). A court must first look to the collective bargaining agreement for any "textual guide" to the exercise of the arbitrator's remedial powers. The court may not disturb the arbitrator's remedy if that remedy can be "fairly implied" by a provision of the collective bargaining agreement. *Id.* at 1164. If there is no textual guide, however, the court must then consider "whether it is at all plausible to suppose that the remedy [the arbitrator] devised was within the contemplation of the parties and hence implicitly authorized by the agreement. Only if [the court] think[s] it clearly was not may [the court] reverse" the arbitrator's decision.[2] *Id.*

2. This discussion refutes the Union's argument that because nothing in the collective bargaining agreement permitted the Company to offer makeup work as a remedy for overtime work violations, the arbitrator impermissibly created a new term of the collective bargaining agreement in fashioning such a remedy. The collec-

tive bargaining agreement does not preclude overtime work as a remedy; neither does it mandate the remedy of backpay. As the above discussion reveals, in such a situation the arbitrator is given wide latitude in fashioning a remedy, that latitude limited only by whether it is plausible that the parties might have contem-

We cannot find any textual guide for the arbitrator's remedy in this case. Hillshire contends that because section 5.07 of the collective bargaining agreement provides that the Company must offer overtime opportunities to employees in the order of their seniority, the agreement "obviously contemplates" that some remedy be available to employees affected by a violation of the provision. The makeup work remedy awarded in paragraph 3, according to Hillshire, would give aggrieved employees the benefit of their bargain and therefore is fairly implied from section 5.07.

Section 5.07 does appear to contemplate some form of remedy, but we cannot agree that it provides a textual guide for the type of remedy that the arbitrator devised. Section 5.07 simply does not provide any clue regarding the nature of the remedy that should be imposed. . We cannot tell from section 5.07 whether "the arbitrator was exercising remedial powers implicitly conferred on him by the agreement or simply devising what he thought, without reference to the agreement or anything fairly implied in it, would be an equitable remedy." *Miller Brewing*, 739 F.2d at 1164.

Although we do not believe that section 5.07 provides a textual guide for the makeup work remedy, it is plausible to suppose that the makeup work remedy was within the contemplation of the parties and thus implicitly authorized by the agreement. We certainly cannot say that the remedy "clearly was not" within the contemplation of the parties. It is at this juncture that we disagree with the decision of the district court. The district court held that it is "'almost unimaginable' that the remedy devised was within the contemplation of the parties during negotiation[s]." (quoting *Miller Brewing*, 739 F.2d at 1164). In support of this conclusion, the district court reasoned that:

> By allowing the elimination of backpay as a remedy for any section 5.07 violations, the arbitrator has effectively destroyed any incentive for the Company to comply with that provision of the collective bargaining agreement. Remedying violations with makeup work, rather than backpay, permits the Company to assign overtime work without regard for seniority and without fear of true retribution. The worst that could result, from the Company's perspective, from a section 5.07 violation would be "forcing" the Company to offer an aggrieved employee the opportunity to perform make-up overtime work when such work was available. This type of "remedy" does little to discourage section 5.07 violations and would likely not have been approved by the Union had the issue been discussed in negotiations.

*Hillshire Farm Co.*, 638 F.Supp. at 1157.

We disagree that the arbitrator's award "effectively destroyed" the Company's incentive to comply with section 5.07. The arbitrator was careful to ensure that the award provided a real remedy for aggrieved employees, requiring that Hillshire offer an aggrieved employee overtime work not, as the district court suggests, when overtime work is available, but rather only when overtime work is otherwise *unavailable*. The arbitrator held that "[i]f the Company intends to remedy overtime violations by offering the aggrieved employes [3] overtime, that overtime work must be work that would not otherwise be performed on an overtime basis." In addition, the makeup work could not be scheduled "so as to preclude the employe from working daily overtime to which the employe is entitled." Thus according to the terms of the arbitrator's decision, Hillshire must offer the aggrieved employee what is the equivalent of "straight" (i.e., nonovertime) work and pay for that work at an overtime rate. This encourages the Company to comply with section 5.07.

The Union in this appeal takes a slightly different tack than did the district court regarding the likelihood that the makeup

---

plated such a remedy. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Miller Brewing*, 739 F.2d at 1163–64.

3. The arbitrator consistently used an uncommon spelling of the word "employee." *See Webster's Third New International Dictionary* 743 (1981).

work remedy will encourage the Company's compliance with section 5.07. The Union contends that it would never have agreed to the makeup work remedy if that issue had come up in negotiations, because the backpay remedy would provide more incentive for the Company to comply with section 5.07. In essence, the Union argues that the makeup work remedy is not a severe enough penalty to encourage the Company's compliance with section 5.07. This argument fails to recognize that the arbitrator was not only concerned with affording a meaningful remedy to aggrieved employees, but was also conscious of the need to avoid a punitive penalty. Arbitrator Gundermann noted: "The basic purpose of any remedy is to place the employe in the position the employe would have been in if the violation had not occurred. A remedy is not intended to be punitive in nature, especially if the violation was the result of an error or mistake." This court and other arbitrators have recognized that arbitral remedies, with few exceptions, may not be punitive. *See Miller Brewing Co.*, 739 F.2d at 1164; *Sundstrand Corp.*, 47 Lab.Arb. (BNA) 284, 286 (1966) (Kelliher, Arb.) (noting that courts and arbitrators will not sanction punitive damages unless there is "clear and precise language setting forth such an understanding in the Contract"). In selecting the makeup work remedy, the arbitrator struck a balance between the employer's and the employees' interests. He reasoned:

By offering an employe wrongfully denied an overtime opportunity another opportunity to work overtime, the employe is being placed in the same approximate position the employe would have been in if the violation had not occurred. Conversely, to compensate the employe for the missed overtime opportunity would result in the employe being compensated for work not performed, thus penalizing the Company. This is an unduly harsh penalty for an honest mistake. In any event, offering an employe work at the overtime rate that would not otherwise have been performed as overtime is a penalty to the Company.

Other arbitrators have employed similar reasoning in arriving at the makeup work remedy.[4] *See Liquid Carbonic Corp.*, 84 Lab.Arb. (BNA) 704, 707 (1985) (Richman, Arb.); *General Foods Manufacturing Corp.*, 83 Lab.Arb. (BNA) 889, 893 (1984) (Williams, Arb.); *Price Brothers Co.*, 76 Lab.Arb. (BNA) 10, 12 (1980) (Shanker, Arb.); *Menasco Mfg. Co.*, 69 Lab.Arb. (BNA) 759, 762–63 (1977) (Bergeson, Arb.). Arbitrator Gundermann carefully tailored the decision to make aggrieved employees whole as well as to avoid a punitive remedy. It is plausible to suppose that this makeup work remedy was within the contemplation of the parties.

In further support of its conclusion that it was "almost unimaginable" that the parties would have contemplated a makeup work remedy, the district court declared that paragraph 3 was so broad as to encom-

---

**4.** In *Price Brothers Co.*, 76 Lab.Arb. (BNA) 10, 13 (1980) (Shanker, Arb.), Arbitrator Shanker reasoned:

[T]here seems no inequity to the aggrieved employee by adopting the Company's approach. The employee is made whole, and it should not make that much difference whether the overtime to which he is entitled is worked on an earlier rather than a later date. On the other hand, the necessary effect of the Union's approach would be to require the Company to pay for work which it never obtained and, indeed, to pay for it at premium rates. Absent something in the Labor Contract which requires the payment of this kind of penalty, it is hard to justify it.

In *General Foods Manufacturing Corp.*, 83 Lab. Arb. (BNA) 889, 893 (1984) (Williams, Arb.), Arbitrator Williams stated:

It is true that there is an overlapping of benefits in the form of pay to the employee, who misses an assignment as a result of a scheduling error, with the benefits of efficiency and economy to the employer in making the change in the remedy. However, the Arbitrator believes that the interests of the employer, in this instance, outweigh those of the employee. The employer loses flexibility and is forced to pay for work not performed, regardless of the circumstances of the case. The interest of the employee should be to be made whole. It does not always require pay to make whole. In fact, the employee may come up with the same pay, regardless of the remedy, in most cases.

pass intentional violations of section 5.07, with the result that "[p]aragraph 3 permits the preclusion of backpay as a remedy to all misscheduled overtime assignments. Such wide application of the remedy for section 5.07 violations is indeed 'unimaginable.'" *Hillshire Farm Co.*, 638 F.Supp. at 1157. The Union argues, along similar lines, that the remedy allows the Company to act without good faith and also to harass senior employees out of favor with the management.

The district court and the Union have misread the arbitrator's award, however, because the arbitrator fashioned the award to limit it to *inadvertent* violations of section 5.07. The arbitrator found that "[u]nder the facts of this case, the violation clearly was the result of an honest mistake; there was no intent to deprive the grievant of the forty-five minutes of overtime." He then held:

> If the Union can establish that an overtime violation occurred as a result of an intent to violate the agreement, as opposed to an error or mistake, the Company should be compelled to compensate the aggrieved employe for the lost overtime opportunity. The Union cited only one instance where this occurred, thus presumably it is not a common occurrence.

The arbitrator thus clearly limited the award in paragraph 3 to violations stemming from honest mistakes. *See also Menasco Mfg. Co.*, 69 Lab.Arb. (BNA) 759, 762 (1977) (Bergeson, Arb.) (noting that arbitrators award monetary damages rather than makeup overtime hours if management acted in bad faith in bypassing grievants for overtime work). It is plausible that the parties would have contemplated this type of remedy.

The Union contends that it would not have agreed to the remedy formulated by the arbitrator in paragraph 3 because the remedy interferes with the rights of more senior employees to work overtime when and where they desire. The Union cites the example of *Ethyl Corp. v. United Steel Workers*, 768 F.2d 180 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89

L.Ed.2d 300 (1986), in which this court enforced the arbitrator's determination that Ethyl Corporation could not deny vacation benefits to employees who had been discharged but had vested vacation rights. The Union argues that its members' rights to work when and where they desire are vested just as were the vacation rights of the discharged employees in *Ethyl Corp.* We are unpersuaded by the Union's reasoning. The decision in *Ethyl Corp.* involved complete divestment of vested vacation rights. This case is distinguishable, because Hillshire employees still may work overtime, and if they do not like the time or department in which work is available, they may decline that work and take chances on other work or simply not work overtime at all.

There is a more fundamental problem with the Union's argument. Section 5.07 does not guarantee employees the right to work overtime when and where they desire. It merely gives them the right to volunteer for overtime and, if overtime work is available, the right to be given overtime work in the order of their seniority. The allocation of overtime is management's "exclusive right," except as limited by the collective bargaining agreement. F. Elkouri & E. Elkouri, *How Arbitration Works* 534 (4th ed. 1985). The limitations on management's rights expressed in section 5.07 relate to the employees' seniority, and not to employees' desires regarding where and when they want to work overtime. This is clearly illustrated in another provision of section 5.07, which states: "If enough volunteers [to work overtime] cannot be found, the remaining work *will be assigned* to those department employees with the least seniority who are qualified by training and/or experience to perform the available work." (emphasis added). This provision affirms the Company's right to allocate overtime regardless of an employee's desire to work at a particular time or in a particular location.

Assuming arguendo that employees actually have such vested rights to work overtime when and where they desire, the arbitrator's decision does not undermine those rights. According to the terms of the arbi-

trator's decision, the makeup work must be overtime work "that would not otherwise be performed on an overtime basis," "it cannot be scheduled so as to preclude the employe from working daily overtime to which the employe is entitled," and, most important, the arbitrator contemplated that it "would then be scheduled at a mutually acceptable time." Thus the rights of more senior employees to work overtime when and where they choose, if they indeed have such rights, are protected by the arbitrator's decision.

The Union argues that the arbitrator's ruling that Hillshire owed Tratz forty-five minutes of overtime backpay is inconsistent with the ruling that the Company could change its future practice and allow makeup work as a remedy. We find no such inconsistency. The arbitrator did not find that the backpay remedy was an implicit term of the collective bargaining agreement. Indeed, the arbitrator expressly found that "[t]he collective bargaining agreement is silent regarding the appropriate remedy for a violation of section 5.07." The arbitrator found that Hillshire had a past practice of remedying violations of section 5.07 with backpay rather than makeup work. The overtime backpay award to Tratz was in accord with the Company's past practice, which was in force on the date of the misscheduled overtime. Because the arbitrator based the award to Tratz on past practice, the award did not undermine the arbitrator's additional ruling that makeup work is an appropriate remedy for future violations. The arbitrator ruled that Hillshire was not bound by its past practice of remedying violations with backpay because the conditions under which the past practice arose later changed.[5] There is ample support for this ruling in the decisions of other arbitrators. *See Dravo Corp.*, 76 Lab.Arb. (BNA) 903, 908 (1981) (Duff, Arb.); *Price Brothers*

*Co.*, 76 Lab.Arb. (BNA) 10, 12 (1980) (Shanker, Arb.); *TRW, Inc.*, 72 Lab.Arb. (BNA) 1047, 1050 (1979) (Whyte, Arb.); *Mid-America Dairymen, Inc.*, 70 Lab.Arb. (BNA) 116, 121 (1978) (Fitzsimmons, Arb.).

### B. Paragraph 3 Does Not Violate Section 2.01

Hillshire maintains that the district court incorrectly held that paragraph 3 of the arbitration award runs afoul of section 2.01 of the collective bargaining agreement.[6] Section 2.01 provides that the Union is "the exclusive representative of the employees of the Company as to rates of pay, hours of work, and conditions of employment." The arbitrator expressly addressed the Union's contention that the makeup remedy amounted to individual bargaining and thus collided with section 2.01:

It is argued by the Union that the Company's position is tantamount to individual bargaining. The amount of work, however, would be determined not by the Company and the employe through individual bargaining, but by the amount of overtime actually worked by the employe improperly assigned the overtime. The overtime work would then be scheduled at a mutually acceptable time. In the opinion of the undersigned, this would not constitute individual bargaining.

The district court, however, held differently:

The matter now before me, violations of a section relating to overtime pay, is an issue specifically covered by section 2.01. The Company is not entitled unilaterally to impose rules affecting rates of overtime pay. Accordingly, the arbitrator's award sanctioning such a rule cannot be enforced; the arbitrator simply failed to hum the correct tune.

*Hillshire Farm Co.*, 638 F.Supp. at 1154.

We disagree with the district court regarding whether section 5.07 violations are

---

**5.** The Company in the past had offered employees an opportunity to work makeup overtime equivalent to the amount of time incorrectly denied, and if the employees refused this offer and requested overtime backpay, the employees received backpay. At oral argument, counsel for the Union was unsure, but speculated that this policy had been in effect 10 to 12 years.

The changed conditions causing the Company to alter this policy were that more employees, when given a choice between makeup work and overtime backpay, chose backpay.

**6.** The Union in its responsive brief does not refute Hillshire's argument.

"specifically covered" by section 2.01. Section 5.07, the subject of the dispute, relates to the assignment of overtime and has nothing to do with overtime pay. In addition, section 2.01 does not specifically cover the issue of which remedy to apply, because it provides only that the Union is the exclusive representative regarding rates of pay and hours of work. Furthermore, we do not read paragraph 3 of the arbitrator's award as allowing the Company "unilaterally to impose rules affecting rates of overtime pay." Paragraph 3 does not permit the Company to make rules regarding *rates* of overtime pay. Paragraph 3 does not extend beyond allowing the Company to remedy overtime assignment violations with makeup work rather than backpay.

As we noted in our discussion of the standard of review, if the arbitrator interprets the collective bargaining agreement in making an award, that award must be enforced unless the interpretation is irrational, even if the district court believed the arbitrator "clearly misinterpreted" the collective bargaining agreement. *E.I. DuPont de Nemours & Co. v. Grasselli Employees Independent Association*, 790 F.2d 611, 614 (7th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986); *see United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Ethyl Corp.*, 768 F.2d at 184. Because the arbitrator's decision was based on his interpretation of section 2.01 of the collective bargaining agreement, the district court could reverse only if the interpretation was irrational.

 We cannot say that the arbitrator's decision is irrational. The remedy afforded an aggrieved employee is limited to the amount of overtime improperly assigned. We agree with the arbitrator that this remedy so circumscribed appears to leave no room for individual bargaining between the Company and the employee. The two parties may negotiate a mutually convenient time to perform the makeup work, but again, the arbitrator is not irrational in deciding that this does not rise to the level of individual bargaining. Because the arbi-

trator's determination that paragraph 3 did not constitute individual bargaining was rational, the district court's decision that paragraph 3 collides with section 2.01 was improper.

## IV.  CONCLUSION

The district court improperly exceeded its permissible scope of review of the arbitrator's award by determining that paragraph 3 of the award failed to draw its essence from the collective bargaining agreement and violated section 2.01 of that agreement. The judgment is reversed with directions to reinstate paragraph 3 of the arbitrator's award.

REVERSED WITH DIRECTIONS.