**UNITED FOOD AND COMMERCIAL WORKERS, LOCAL UNION NO. 7R,**
Plaintiff–Appellant,

v.

**SAFEWAY STORES, INC.,**
Defendant–Appellee,

**and**

**Sandra Cortez, Rule 19(a)(2)**
Defendant–Appellee.

**No. 87–2547.**

United States Court of Appeals,
Tenth Circuit.

Nov. 17, 1989.

Thomas B. Buescher, of Brauer & Buescher, P.C., Denver, Colo., for plaintiff-appellant.

Sandra R. Goldman (Gregory A. Eurich, of Holland & Hart, Denver, Colo., with her on the brief), of Holland & Hart, Denver, Colo., for defendant-appellee Safeway Stores Inc.

Before McKAY, TACHA, and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

The plaintiff, United Food and Commercial Workers Local Union Number 7R (the Union), appeals from an order of the district court denying the Union's motion to vacate an arbitration award in favor of defendant Sandra Cortez, an employee of defendant Safeway Stores, Inc. (Safeway),

and entering judgment against the Union for back pay and interest. The Union contends on appeal that (1) Cortez has no standing to seek to enforce the award; (2) the arbitrator exceeded his authority by assessing part of the back pay award against the Union because of its delay in bringing Cortez' grievance; and (3) the district court erred in enforcing a monetary judgment, including interest, against the Union. We affirm in part, reverse in part, and remand for determination of the amount of damages.

I.

The arbitration at issue arose out of a grievance brought by Cortez against Safeway. Cortez was laid off effective May 24, 1984. She immediately grieved Safeway's failure to recall her to another position that had been available on May 20, 1984, contending that Safeway had violated the recall provisions of the collective bargaining agreement. When settlement meetings between the Union and Safeway proved unsuccessful, the Union informed Safeway of its intent to arbitrate the dispute in a letter dated June 22, 1984.

The Union did not pursue arbitration for nearly a year. In July of 1985, a Union representative advised Cortez that there was no contractual violation stemming from her grievance. The Union representative followed up the conversation with a letter dated October 10, 1985, informing Cortez that the Union would withdraw her grievance and that she had a right to appeal to the Union's Executive Board.

Cortez successfully appealed her case to the Union's Executive Board, and on January 16, 1986, the Union informed Safeway of its intent to pursue the matter in arbitration. An arbitration hearing was held on August 12, 1986. The arbitrator found that Safeway had violated the collective bargaining agreement by failing to recall Cortez, and that Cortez was entitled to instatement in the grieved position and back pay as a remedy for the violation. Because of the Union's delay in bringing the matter to arbitration, the arbitrator assessed a portion of the back pay award

against the Union, noting that Safeway "should not be held responsible for the indifference and inattention of the Union toward prompt resolution of Cortez' grievance." The arbitrator's award did not set the amount of back pay, but rather awarded "back pay for the period May 20, 1984 through July 25, 1986, ... less any wages, salary, or other compensation received by her in the interim."

The Union sued Safeway to vacate the portion of the award assessing liability for back pay against the Union and to modify the award to assess all back pay liability against Safeway. The court joined Cortez as a necessary party under Federal Rule of Civil Procedure Rule 19(a)(2). Cortez filed a counterclaim, alleging that the Union had breached its duty of fair representation in connection with its prosecution of her grievance. The district court granted partial summary judgment for Safeway and Cortez on the Union's motion to vacate the award, holding that the arbitrator's decision drew its essence from the collective bargaining agreement.

On August 17, 1986, Cortez and the Union jointly filed a motion to dismiss Cortez' counterclaim without prejudice while settlement negotiations were pending. As part of the motion to dismiss, the parties stated that:

> [T]his motion is not intended to be a resolution of any claim that defendant Sandra Cortez may have for interest accruing on the Arbitrator's Award, and it is understood by the plaintiff, (without confessing or admitting to the entitlement of post-award interest) that the defendant Cortez will apply for an award of interest accruing on the back pay from the date of the arbitrator's award.

Cortez later filed a motion for confirmation of the arbitrator's award pursuant to the United States Arbitration Act (Arbitration Act), 9 U.S.C. §§ 1–15, seeking interest from the date of the award and entry of judgment for the amount of back pay and interest due from the Union. After filing the motion for confirmation, but prior to the Union's filing of a response, on August 26th Cortez and the Union stipulated to a dismissal of her counterclaim with prejudice. Part of that stipulation provided as follows:

> The parties further stipulate that no final judgment in this action concerning Plaintiff's suit to vacate a portion of the arbitration award be entered until this Court has ruled upon Cortez' motion for confirmation of arbitrator's award and for entry of judgment.

Based on that stipulation, the court entered an order dismissing Cortez' counterclaim with prejudice.

The Union then filed its response to Cortez' pending motion to confirm the award, contending that Cortez lacked standing to seek confirmation under the Arbitration Act because she was not a "party to the arbitration" under section 9 of the Act. The district court rejected this argument as "disingenuous," holding that in the August 26th stipulation the Union had agreed to Cortez' right to pursue confirmation of the award. The court entered judgment in favor of Cortez in the amount of $25,261.07 plus interest from August 29, 1986, the date of the arbitrator's award.

After an unsuccessful motion to alter or amend the judgment, the Union filed this appeal.

### II.

We first address the issue of Cortez' standing to seek confirmation and enforcement of the arbitration award. The Union challenges Cortez' "standing." We understand the standing argument to be a claim that Cortez is barred under either the Federal Arbitration Act, 9 U.S.C. § 9, or section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, from seeking judicial confirmation or enforcement of the arbitrator's award of contractual rights established by the collective bargaining agreement.

### A.

We agree that Cortez is barred from seeking judicial confirmation and enforcement of the arbitrator's award under the Arbitration Act. The Arbitration Act

expressly excludes from its coverage "contracts of employment of ... any ... workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Collective bargaining agreements are "contracts of employment" within the meaning of this exclusion. *American Postal Workers Union v. United States Postal Serv.*, 823 F.2d 466, 473 (11th Cir.1987). The Arbitration Act, therefore, is generally inapplicable to labor arbitration. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 372 n. 9, 98 L.Ed.2d 286 (1987); *Posadas de Puerto Rico Assocs., Inc. v. Asociacion de Empleados de Casino de Puerto Rico*, 873 F.2d 479, 482 (1st Cir.1989).[1] We thus hold that Cortez is not entitled to seek confirmation and enforcement of the arbitrator's award under the Arbitration Act.

### B.

■ The Union contends that Cortez is barred from seeking confirmation and enforcement of the arbitrator's award under section 301 of the Labor–Management Relations Act because her counterclaim that the Union breached its duty of fair representation was dismissed with prejudice. Ordinarily, an employee must allege a breach of the duty of fair representation in order to avoid dismissal of his or her section 301 suit for failure to exhaust exclusive contractual remedies under the collective bargaining agreement. Under the peculiar facts of this case, the fact that Cortez' breach of the duty of fair representation claim was dismissed with prejudice is irrelevant because we hold that Cortez has otherwise satisfied the section 301 exhaustion requirements.

Section 301 provides;

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 does not exclude from federal jurisdiction suits brought by individual employees for violations of collective bargaining agreements. To the contrary, "section 301 contemplates suits by and against individual employees as well as between unions and employers." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

Despite section 301's provision for individual employee suits, an employee can only sue if he or she has exhausted any exclusive grievance procedures provided in the collective bargaining agreement. In *Hines*, the Supreme Court held that

an employee [cannot] sidestep the grievance machinery provided in the [collective bargaining agreement] and that unless he attempted [first] to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer in the District Court [will] be dismissed.

*Id.* at 563, 96 S.Ct. at 1055–56. This "exhaustion requirement," *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967), flows from the strong federal policy favoring contractual grievance procedures as a means of "giving content to the collective-bargaining agreement and determining [the parties'] rights and obligations under it" and "promoting the goal of industrial peace." *See Bowen v. United States Postal Serv.*, 459 U.S. 212, 225, 103 S.Ct. 588, 596, 74 L.Ed.2d 402 (1983). The employee's rights under the collective bargaining agreement are protected by the union's duty of fair representation, which requires the union always to act in good faith and honesty of purpose in the exercise of its discretion on behalf of the individual employees it represents. *See Ford*

---

1. The federal courts may look to the Arbitration Act for guidance in fashioning federal common law to govern suits arising under section 301 of the Labor–Management Relations Act (LMRA), 29 U.S.C. § 185, *see Misco*, 484 U.S. at 40 n. 9, 108 S.Ct. at 372 n. 9, but they are not bound to do so, *see, e.g., American Postal Workers Union*, 823 F.2d 473–77; *Derwin v. General Dynamics Corp.*, 719 F.2d 484, 488 (1st Cir.1983).

*Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

■ In order to seek confirmation and enforcement of the arbitrator's award under section 301, Cortez must show (1) that she has exhausted the grievance procedures under the collective bargaining agreement, *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965), or (2) that she falls within an exception to the exhaustion requirement. The two recognized exceptions are (A) where either the union or the employer has repudiated the collective bargaining agreement's grievance procedures, *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916, or (B) where the union has breached its duty of fair representation by acting arbitrarily, discriminatorily, or in bad faith, *id.* We find that Cortez has satisfied the exhaustion requirement because the Union refused to pay Cortez' back pay and challenged the award due to its own adverse interest in the enforcement of the award.

The fundamental purpose of the exhaustion bar is to require employees to pursue their grievances through a bargained-for grievance procedure that is part of the collective bargaining agreement. *See Hines,* 424 U.S. at 562, 96 S.Ct. at 1055; *Maddox,* 379 U.S. at 652–53, 85 S.Ct. at 616. When grievances are resolved through those bargained-for procedures the goal of industrial peace and self-government is more nearly attained. Cortez properly presented her grievance to the Union. The grievance was pursued, after numerous delays, to final arbitration. Under the collective bargaining agreement, "[a] finding or award of the arbitrator shall be final and conclusive upon the parties hereto." Cortez had thus pursued her grievance remedies as far as she could under the collective bargaining agreement. The purpose of the exhaustion requirement—that industrial/commercial grievances be settled through the bargained-for procedure—has thus been served. Allowing Cortez to seek to *confirm* and *enforce* the arbitrator's award does not undermine the bargained-for grievance procedures, but rather enhances them by underscoring their finality and conclusiveness. This is not a situation where an employee is seeking to *upset* an award, which would implicate the policy concerns of undermining bargained-for grievance procedures.

■ A justification for allowing the exhaustion requirement to bar individual employee's suits under section 301 rests upon the union's duty of fair representation, which serves as the "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Hines,* 424 U.S. at 564, 96 S.Ct. at 1056 (quoting *Vaca,* 386 U.S. at 82, 87 S.Ct. at 912). If the union is fairly representing the employee, the employee's interests are adequately protected. As the "fairness" of the union's representation decreases, however, so does the employee's protection and the justification for the exhaustion bar. Thus, if the union "refuses to press or only perfunctorily presses the individual's claim," *Maddox,* 379 U.S. at 652, 85 S.Ct. at 616, or otherwise acts arbitrarily, discriminatorily, or in bad faith, *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916, then the union has breached its duty of fair representation and the employee is entitled to sue under section 301. *Id.* The union has, in effect, deprived the employee of any ability to proceed in the collective bargaining agreement's grievance procedure by ceasing to function as the employee's representative where the *right* to proceed rests in the union as representative and not in the employee. Thus, when the union ceases to act as the employee's representative, the employee has "exhausted" his or her remedies under the collective bargaining agreement. Once this exhaustion occurs, the employee is entitled under *Maddox, Vaca,* and *Hines* to sue under section 301.

In this case, the Union *refused* to pay the portion of the back pay liability assessed against it by the arbitrator's award. The Union also challenged the award in court, seeking to vacate the portion of the award assessing liability against it and to modify the award to assess all the back pay liability against Safeway. By refusing to pay its portion of Cortez' back pay and challenging the award because of its own adverse inter-

est the Union acted arbitrarily and ceased to function as Cortez' representative. We thus hold that where an employee has pursued the grievance procedures to the final stage authorized under the collective bargaining agreement, obtained a favorable award in part against the union, and the union fails to honor or enforce the award, thus ceasing to function as the employee's representative, then the employee has exhausted his or her remedies under the collective bargaining agreement and is entitled to seek confirmation and enforcement of the award under section 301.

### III.

We next consider whether the arbitrator exceeded his authority in awarding back pay against the Union. The scope of our review is restricted.

Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award, and courts must exercise great caution when asked to set aside an award. Because a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited.

*Foster v. Turley,* 808 F.2d 38, 42 (10th Cir.1986) (citations omitted); *see Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1147 (10th Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982).

■ When we review labor arbitration decisions, the terms of the collective bargaining agreement constitute one of the principle limitations upon an arbitrator's authority.

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation,

courts have no choice but to refuse enforcement of the award.

*United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The scope of the issues submitted to the arbitrator also controls the arbitrator's authority. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *see Retail Store Employees Union Local 782 v. Sav–On Groceries,* 508 F.2d 500, 502–03 (10th Cir.1975). The parties may, however, agree to extend the arbitrator's authority in the submissions. *See Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 62 (3d Cir.1986) ("Even assuming the questions *went beyond the arbitration provisions of the contract,* 'once the parties have gone beyond their promise to arbitrate and have supplemented the agreement by defining the issue to be submitted to an arbitrator, courts must look both to the contract and to the submission to determine his authority.'" (emphasis added) (quoting *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 302 (3d Cir.1982)); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980) ("If the parties enter into a submission agreement, this later contract is the substitute for legal pleadings; it joins the issues between the parties and empowers the arbitrator to decide it."). Extension of the arbitrator's authority through submissions is only allowed to the extent that the submission does not violate an express provision of the collective bargaining agreement.

■ "[W]here the question of the submission to the arbitrator is vague, the award of the arbitrator will not be set aside in a subsequent court proceeding, unless it can be shown that the essence of the resulting award was not drawn from the collective bargaining agreement." *Kroger Co. v. International Bhd. of Teamsters,* 380 F.2d 728, 730–31 (6th Cir.1967); *cf.*

*Sav–On Groceries,* 508 F.2d at 502–03 (holding *Kroger* inapposite when question submitted to arbitrator did not involve remedies, but arbitrator's award included remedies). The parties may limit the discretion of the arbitrator, such as through submitting a precise statement of the issues to the arbitrator or through providing express limitations in the collective bargaining agreement. *See Kroger,* 380 F.2d at 730–31. When the parties fail to limit the scope of the submission, however, we will affirm the arbitrator's award if it draws its essence from the collective bargaining agreement and is not contrary to the express language of that agreement. *See Mistletoe Express Serv. v. Motor Expressmen's Union,* 566 F.2d 692, 694 (10th Cir.1977).

 We will not interfere with an arbitrator's decision "unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation." *Sterling Colo. Beef Co. v. United Food & Commercial Workers Local Union No. 7,* 767 F.2d 718, 720 (10th Cir.1985). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco,* 484 U.S. at 38, 108 S.Ct. at 371. Given this limited standard of review, we find sufficient basis in the collective bargaining agreement and the language of the issues submitted to the arbitrator to uphold the arbitrator's award of back pay against the Union.

 We first address whether the arbitrator's decision was within the scope of the issues submitted to him. The parties framed the issues as follows:

> Did the Company violate the Labor Agreement when it failed to recall Grievant Sandra Cortez from layoff on May 20, 1984? If so, to what relief is Grievant entitled?

Safeway is the only party mentioned in the first question dealing with breaching the agreement. The question as to remedy, however, is not so limited. Safeway's violation of the agreement is a prerequisite to the employee's need for any remedy, as there could be no damages for the Union's delay in bringing the grievance without some violation by Safeway. Because the issue submitted fails to expressly restrict the party from whom relief would be available, the arbitrator could interpret it as encompassing whatever remedy was necessary and permissible under the collective bargaining agreement to compensate the employee for any damages arising out of the breach.

 We cannot say that the arbitrator's award is contrary to the express language of the collective bargaining agreement. Our case is distinguishable from the situation in *Local 1837 v. Maine Public Service Co.,* 579 F.Supp. 744 (D.Me.1984), in which the court held that a submission of "what shall be the remedy?" did not broaden the arbitrator's authority. In *Local 1837,* the court had found that the arbitrator's award changed contractually binding "past practices," thus violating an express "no modification" provision of the collective bargaining agreement. *Local 1837* merely follows *Mistletoe's* prohibition on confirming arbitrator's awards that are contrary to the express provisions of the collective bargaining agreement. Unlike *Local 1837,* the collective bargaining agreement between Safeway and the Union contains an express provision imposing a duty on both parties to make an "earnest effort ... to settle such [disputes or complaints] promplty [sic]," which includes requesting arbitration "with reasonable promptness." This provision supports imposing damages upon the breaching party, because delay on the part of either party could conceivably magnify losses suffered by the employee or the other party.

 The arbitrator stated that "[i]t is ... clear that the Company should not be held responsible for the indifference and inattention of the Union toward prompt resolution of Cortez' grievance." Whether the arbitrator drew this conclusion from the language of the collective bargaining agreement is admittedly unclear, but "arbitration awards generally need not delineate reasons or reasoning, at least when the grounds for the award may be gleaned

from the record." *Ormsbee Dev.*, 668 F.2d at 1147. The mere fact that the arbitrator also allegedly made a reference to fairness during the course of the arbitration[2] does not change this result, as this statement does not necessarily reflect his full analysis of the agreement. Fairness is a proper consideration as long as the determination of fairness draws its essence from the collective bargaining arrgreement. *See Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361.

"[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Misco*, 484 U.S. at 38, 108 S.Ct. at 371. Although we might have decided this issue differently had we been the arbitrator, we cannot say that the award did not draw its essence from the collective bargaining agreement.

## IV.

■ The Union contends that even if the award draws its essence from the collective bargaining agreement, it should not be enforced because it is contrary to public policy. According to the Union, the public policy favoring arbitration as a dispute resolution mechanism is compromised if arbitrators are allowed to impose damages against unions bringing employee grievances. The Union further contends that a conflict of interest is created by requiring it simultaneously to prosecute employee claims and to defend itself against damages for delay. Such a conflict of interest allegedly causes a disincentive for the Union to attempt to establish a violation of the agreement on the part of the employer.

As the Supreme Court recently stated, a court's refusal to enforce an arbitrator's *interpretation* of [a collective bargaining agreement] is limited to situations where the contract as interpreted would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to

the laws and legal precedents and not from general considerations of supposed public interests.' "
*Misco*, 484 U.S. at 43, 108 S.Ct. at 373 (emphasis in original) (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983)).

A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. That doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act. . . .
*Id.* (citations omitted). In addition to the requirement that a public policy be narrowly defined, "the violation of such a policy must be clearly shown if an award is not to be enforced." *Id.* 484 U.S. at 43, 108 S.Ct. at 373–74. "A refusal to enforce an award must rest on more than speculation or assumption" regarding such a violation of public policy. *Id.* at 44, 108 S.Ct. at 374.

In the context of this case, the Union failed to show clearly a public policy violation. We fail to see how the enforcement of the arbitrator's award in this case has any significant tendency toward undermining the policy favoring the arbitration of labor disputes. In fact, the Supreme Court has expressly upheld apportionment of damages against a union. *See Bowen v. United States Postal Serv.*, 459 U.S. 212, 224, 103 S.Ct. 588, 595, 74 L.Ed.2d 402 (1983) (stating that *Vaca* approves apportionment). Any potential conflict of interest between the union and employee clearly could be avoided by submitting a precise statement of the issues to the arbitrator, or by limiting the arbitrator's authority with appropriate language in the collective bargaining agreement. Enforcing the arbitrator's award here reinforces the policy of arbitration by permitting the arbitrator's

---

**2.** The Union states in its brief that during the course of the arbitration, the arbitrator informed them that he was "not the least bit hesitant" to award back pay against a union, and that in his view it was only "fair" that the union pay if it delays in processing a grievance.

decision to stand to the extent that it is drawn from the essence of the agreement and does not exceed the scope of the issues submitted.

## V.

 Finally, the Union contends that the district court erred in enforcing the arbitration award to the extent that it directed an entry of judgment in the amount of $25,261.07, plus accrued interest, from the date of the award until the entry of judgment.

We hold that the district court erred in entering a monetary judgment. The arbitration award is silent as to the amount of damages. The award merely states that "grievant is awarded back pay for the period of May 20, 1984 through July 25, 1986, [according to an allocation schedule between the Union and Safeway], less any wages, salary or other compensation received by her in the interim." Apparently, the only basis in the record for the amount of damages awarded is the affidavit of Fred LaSavio, the Union's business representative, which states in relevant part:

Since Arbitrator Bardwell issued his decision, we have been advised by Safeway that before deductions for interim earnings and before resolving any question of mitigation of damages, the total back pay to which Ms. Cortez is entitled is $33,342.84. Under the Arbitrator's decision, Local 7 would be liable for $25,-261.07b of that amount.

The figures in this statement clearly reflect the amount due *before* deductions for any interim earnings or mitigation of damages.

The Arbitrator expressly retained jurisdiction over this dispute "to the extent that the parties are unable to agree upon a determination of the amounts and allocation of back pay due Grievant." Therefore, we reverse the district court's order to the extent that it imposes a monetary judgment against the Union, and direct the district court to remand the dispute regarding the appropriate amount of back pay to the arbitrator. *See Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362 (remand to

arbitrator permissible to establish exact amount of award).

 The granting of prejudgment interest from the date of the arbitrator's award in an action seeking to confirm that award is a question of federal law entrusted to the sound discretion of the district court. *See Lodges 743 and 1746 v. United Aircraft Corp.,* 534 F.2d 422 (2d Cir.1975), cert. denied, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976); *Stroh Die Casting Co. v. International Ass'n of Machinists & Aerospace Workers, Lodge No. 10,* 553 F.Supp. 68 (E.D.Wis.1982). On the record before us, we cannot say that the district court abused its discretion in granting interest in this case.

## VI.

The judgment of the district court is therefore AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accordance with this opinion.

McKAY, Circuit Judge, concurring in part and dissenting in part:

I dissent from the court's conclusion in part III that the arbitrator's award drew its essence from the party's submission of issues to him. While I have no quarrel with the rest of the court's opinion, I find it unnecessary to reach those points because I cannot agree that the arbitrator's award draws its essence from the contract *and the submission*—the latter being necessary to the validity of the award. *See United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) ("A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) ("We see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration. It is not apparent that he went beyond the submission."); *Retail Store Employees Union Local 782 v. Sav-On Groceries,* 508 F.2d 500, 502–03 (10th Cir.

1975) (the issue of backpay was not submitted to the arbitrator and thus the arbitration award was null and void insofar as it applied to that issue).

The full text and limit of the submission is: "Did the Company violate the Labor Agreement when it failed to recall Grievant Sandra Cortez from layoff on May 20, 1984? If so, to what relief is Grievant entitled?" It strains credibility to suggest that in context this submission is vague insofar as who is the object of the remedies being sought. The majority interprets this submission as if it reads: "If [the company violates the labor agreement], to what relief is Grievant entitled [from the Union]?" The court's entire decision is bottomed on this point, and I respectfully cannot agree with it. I believe union liability is not one of the issues submitted to the arbitrator.

I would not imply that an arbitration submission, clearly framed in terms of employer's breach, is modified to make the union a party defendant for remedies purposes merely because it does not expressly exclude the union from remedies. In my judgment, it is clearly an abuse of language and content to so construe a submission which restricts the scope of arbitration authority, as well as the contract itself. This is particularly true where the effect is to prevent fair notice and to put the union in clear conflict with the person it is representing. I probably would not hold that such a submission, deliberately and expressly entered into, would be illegal as against public policy. However, I clearly would not approve an arbitrator implying such a submission against the clear context of the submission language, thus requiring the union to defend itself against its client while at the same time requiring it to give that client fair representation. Although factually distinguishable, I find the principles of *Local 1837 v. Maine Public Service Co.*, 579 F.Supp. 744 (D.Me.1984) (the question submitted to the arbitrator: "[W]hat shall be the remedy?" did not empower the arbitrator to disregard the collective bargaining agreement in fashioning a remedy), clearly supportive of these views. *See also, Courier–Citizen v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 281–82

(1st Cir.1983) (the question submitted to the arbitrator: "Did the Company violate the contract by placing Richard Grant in the laborer's job.... If so, what shall be the remedy?" did not empower the arbitrator to provide a back pay remedy to any employee, except the senior journeyman in layoff status; and the court refused to enforce an arbitrator's award which exceeded the authority conferred in the submission by awarding back pay to two employees). I can say with confidence that the arbitrator's award does not draw its essence from the submission. "Essence" does not take much, but whatever the odor of this arbitration award, it is not essence.