**CARPENTER LOCAL NO. 1027, MILL CABINET–INDUSTRIAL DIVISION, affiliated with the United Brotherhood of Carpenters and Joiners of America and Chicago and Northeast Illinois District Council of Carpenters, AFL–CIO, Plaintiffs–Appellees,**

v.

**LEE LUMBER AND BUILDING MATERIAL CORPORATION, Defendant–Appellant.**

No. 92–3670.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1993.

Decided Sept. 7, 1993.

Hugh J. McCarthy, Nancy J. Doyle, Collins P. Whitfield, Brian J. Stephenson, Joseph P. Berglund (argued), McCarthy & Associates, Chicago, IL, for plaintiffs-appellees.

James S. Frank (argued), Steven M. Post, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant-appellant.

Before COFFEY and MANION, Circuit Judges, and ALDISERT, Senior Circuit

Judge.*

MANION, Circuit Judge.

Lee Lumber and Building Material Company fired Richard Gonsowski in February 1990. Gonsowski's union, Carpenter Local No. 1027, filed a grievance on Gonsowski's behalf. Shortly after the union filed the grievance, Lee agreed to reinstate Gonsowski if, among other conditions, he returned to work within seven days. Lee and the union agreed that the union would notify Gonsowski of his reinstatement and make sure he returned to work on time.

Unfortunately, Gonsowski was out of town and union officials were unable (or neglected) to track him down and tell him to report to work. Gonsowski did not learn about his reinstatement until he returned to Chicago and spoke to a union representative, nine days after Lee agreed to reinstate him. By then, it was too late; when Gonsowski reported to work the following day, a Lee officer told him that Lee would not reinstate him and that his firing was final.

The union filed a second grievance charging that Lee fired Gonsowski without just cause, but the parties were unable to settle the grievance. The collective bargaining agreement between the union and Lee contained a provision allowing the arbitration of any "grievance," which the agreement defined as "a complaint or claim against the Employer." Pursuant to that provision, the union submitted Gonsowski's grievance for arbitration.

As the arbitrator saw things, the issue before him was whether Lee had "just cause to terminate the grievant, Richard Gonsowski, under the Agreement.... If the Company did not have just cause to terminate the grievant under the Agreement ... what is the remedy?" The arbitrator ruled that Gonsowski could not be held responsible for failing to report back to work on time because he had not been told when to report back to work. The arbitrator also ruled that although the union had agreed to tell Gonsowski about his reinstatement, Lee was still responsible for failing to reinstate him: "It is

the Company that reinstates, not the Union." Therefore, the arbitrator found that Lee violated its agreement to reinstate Gonsowski and ordered Lee to reinstate Gonsowski with back pay. But the arbitrator did not stop there. Because the union had failed to carry out its agreement to tell Gonsowski about his reinstatement, the arbitrator ordered the union to reimburse Lee the amount of back pay Lee owed to Gonsowski.

The union filed a complaint in the district court seeking to vacate the portion of the arbitrator's decision ordering the union to reimburse Lee. Lee filed a counterclaim seeking enforcement of the entire award. The district court granted summary judgment for the union. The court held that by ordering the union to reimburse Lee for Gonsowski's back pay, the arbitrator exceeded his contractual authority by in effect deciding a claim by Lee against the union. Lee appeals the district court's decision.

Judicial review of arbitration awards is limited. Courts give arbitrators' decisions considerable deference; only if the arbitrator's decision fails to "draw[ ] its essence from the collective bargaining agreement" will a court refuse to enforce that decision. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *United Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987); *National Wrecking Co. v. Teamsters Local 731*, 990 F.2d 957, 960 (7th Cir.1993). An arbitration award "draws its essence" from the contract so long as that award is based on the arbitrator's interpretation of the contract—even if the court is convinced that interpretation is unsound or based on a factual or legal error. *Ethyl Corp. v. United Steel Workers*, 768 F.2d 180, 184 (7th Cir.1985); *National Wrecking*, 990 F.2d at 960. "It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract ... that the award can be said not to 'draw its essence from the collective bargaining agreement'...." *Ethyl Corp.*, 768 F.2d at 184-85.

The limited scope of judicial review of arbitration decisions comes from the fact that

* Hon. Ruggero J. Aldisert, Senior Circuit Judge for the Third Circuit, is sitting by designation.

arbitration is a creature of contract. Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision—if a court may overrule that decision because it perceives factual or legal error in the decision—the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely the starting point of litigation. See *Ethyl Corp.*, 768 F.2d at 183–84 (citing *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854)); *Independent Employees Union of Hillshire Farm v. Hillshire Farm Co.*, 826 F.2d 530, 532 (7th Cir. 1987).

By the same token, respect for the parties' contract justifies the limited review courts do undertake. An arbitrator draws his power from the parties' contract. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); see also *Georgia–Pacific Corp. v. Local 27*, 864 F.2d 940, 944 (1st Cir.1988) ("in labor arbitration ... the power and authority of the arbitrator is totally derived from the collective bargaining agreement"). Although doubts about the arbitrator's power should be resolved in favor of arbitration, *Warrior & Gulf*, 363 U.S. at 583, 80 S.Ct. at 1353, for a court to enforce an award that clearly is beyond the arbitrator's power denies the parties of the benefit of their bargain just as surely as overturning an award because the court disagrees with the decision's legal or factual basis. Thus, "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.... When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Steelworkers v. Enterprise Corp.*, 363 U.S. at 597, 80 S.Ct. at 1360.

The union maintains that the arbitrator imposed a remedy—union reimbursement to Lee for the amount of back pay Lee owed Gonsowski—that the collective bargaining agreement did not allow him to impose. According to the union, this is so clear that the arbitrator could not have been interpreting the contract when he ordered reimbursement; he must have been relying on his own sense of industrial justice.

Lee does not point to any specific language in the collective bargaining agreement that even arguably authorized the arbitrator to order the union to reimburse Lee. In fact, the collective bargaining agreement does not explicitly set forth any remedies an arbitrator may impose. But this is not unusual, nor does it, by itself, limit the arbitrator's remedial authority. Were that so, the arbitrator would be powerless to impose *any* remedy, and that could not be correct. Since the arbitrator "derives all his powers from the agreement, the agreement must implicitly grant him remedial powers when there is no explicit grant." *Miller Brewing Co. v. Brewery Workers Local No. 9*, 739 F.2d 1159, 1163 (7th Cir.1984).

When a collective bargaining agreement neither mentions a specific remedy nor contains language from which that remedy can be "fairly implied," a court must consider "whether it is at all plausible to suppose that the remedy devised was within the contemplation of the parties and hence implicitly authorized by the agreement." *Miller Brewing Co.*, 739 F.2d at 1164; *Hillshire Farm Co.*, 826 F.2d at 533. As noted, the collective bargaining agreement does not mention any remedies, and no language exists in the agreement from which one could "fairly imply" the reimbursement remedy imposed in this case. In fact, the agreement points in exactly the opposite direction. The agreement defines a "grievance" as "a complaint or claim *against* the employer...." There is no provision in the agreement for grievances by Lee or its employees against the union. The agreement expressly forbids the arbitrator from creating any such provision; the arbitrator may decide "only the grievance submitted, by applying the express language of this Agreement, and shall have no authority to add to, subtract from, modify, or amend this Agreement."

The reasonable conclusion to draw from this language is that Lee and the union did not agree to arbitrate any claims other than those by the union or an employee against Lee. It reasonably follows that the remedies the arbitrator may impose are similarly limited: if Lee may not arbitrate its claims against the union, the arbitrator may not impose a remedy against the union in Lee's favor. To do so would effectively allow the arbitrator (at least in some situations) to adjust Lee's claims against the union or employees without Lee even having to go through the formality of filing a claim—even though the collective bargaining agreement limits grievances to claims against Lee, and allows the arbitrator to decide only submitted grievances.

Not only does the collective bargaining agreement strongly imply that the arbitrator could not impose the reimbursement remedy he imposed in this case, we think it is clearly implausible to suppose the parties ever contemplated that remedy. Given the arbitration clause the parties did agree to, it is "almost unimaginable" that the union would have agreed to the type of remedy imposed here if the question had arisen during bargaining. See *Miller Brewing Co.,* 739 F.2d at 1164. As we have already noted, such a remedy would have been inconsistent with the express limitation Lee and the union imposed on their agreement to arbitrate. Moreover, by agreeing to allow the type of remedy imposed here, the union would have created the potential for conflicts between its own interests and its duty to fairly represent its employees. This case presents an example of the conflicts that could arise. If the union had known that it might be liable for the amount of Gonsowski's back pay, the temptation would have existed for the union to give short shrift to Gonsowski's grievance or to defend itself at Gonsowski's expense, since if Gonsowski was not entitled to back pay, the union could not be liable. Why would the union have tempted fate by knowingly exposing itself to such potential conflicts? We cannot think of a reason.

■ Lee argues that even if the collective bargaining agreement limited the arbitrator's remedial authority, the parties expanded that authority by not expressly limiting the possible remedy in the question they submitted for arbitration and by actually litigating the issue of union liability before the arbitrator. Parties to a collective bargaining agreement containing an arbitration provision may supplement and extend that agreement in their submission to the arbitrator. See *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 302 (3d Cir. 1982). And the agreement to arbitrate a particular issue may be implied from the parties' conduct, including their actual litigation of that issue. *Volvo GM Heavy Truck v. United Auto Workers,* 914 F.2d 1493, 135 LRRM 2604, 2606 (4th Cir.1990). Such a rule makes sense; parties to a contract generally are free to modify their agreement, even if an arbitrator is not.

■ But none of this helps Lee. In the district court, Lee did not depend on the submission or the parties' arguments before the arbitrator to establish the arbitrator's remedial authority. Thus, Lee has waived the issue. See *Moseley, Hallgarten, Estabrook & Weedon v. Ellis,* 849 F.2d 264, 271 (7th Cir.1988). In any event, Lee's argument is unpersuasive. It is true that the question submitted to the arbitrator concerning remedy asked only "what is the remedy?" and did not expressly limit the possible remedies the arbitrator could impose. But this must be read in the context of the rest of the submission, which framed the dispute in terms of Lee's—not the union's—liability ("Did *the Company* have just cause to terminate [Gonsowski]?"). It must also be read in the context of the collective bargaining agreement, which can not plausibly be read to permit remedies against the union. In context, there is nothing in the submission that would have alerted the union that it might be liable for Gonsowski's back pay or that it had any reason to defend against a possible award against it. Moreover, for the union to have submitted the issue of its own liability to the arbitrator would have created the same conflict of interest problem we mentioned previously. It is just as implausible to read the submission as authorizing the arbitrator's reimbursement award against the union as it is

to read the collective bargaining agreement to do so.

We recognize that in a similar situation, the Tenth Circuit upheld an arbitral award of back pay against a union. In *United Food & Commercial Workers v. Safeway*, 889 F.2d 940 (10th Cir.1989), the union informed the employer of its intent to arbitrate a dispute for an employee but waited for almost a year to pursue arbitration. The arbitrator ultimately found that the employee was entitled to back pay. But the arbitrator also assessed part of the back pay award against the union because the union's delay in pursuing arbitration had caused that part of the award to accrue. *Id.* at 942–43. The Tenth Circuit affirmed the district court's decision upholding the award of back pay against the union. The award "drew its essence" from the collective bargaining agreement, the court held, because the agreement imposed a duty on the union to request arbitration "with reasonable promptness," the award was not contrary to the agreement's express language, and the submission did not "expressly restrict the party from whom relief would be available...." *Id.* at 947.

Lee understandably argues that we should reach the same conclusion as the Tenth Circuit in *Safeway*. But *Safeway* is distinguishable because there is no mention in that case of any language in the collective bargaining agreement limiting arbitrable grievances solely to claims against the employer. Different contractual language justifies different results. *Safeway* does not stand for the proposition that a submission that does not expressly restrict the party from whom relief is available authorizes remedies against a union in the face of a collective bargaining agreement limiting arbitrable grievances only to claims against the employer.

Lee raises two more issues. First, Lee argues that if we find the arbitrator's reimbursement award unenforceable, we should vacate the entire award—including that part finding that Lee must pay back pay to Gonsowski—and remand to the arbitrator so that he may fashion a remedy consistent with our ruling. Lee does not explain clearly why this course is necessary. As best we can tell from its brief, Lee seems to be asserting that the arbitrator determined that Lee was not really at fault for Gonsowski's firing. Rath-

er, the union was. Since the union, not Lee, caused Gonsowski's firing, the arbitrator decided that Lee should not be responsible for Gonsowski's back pay; hence, the order to reimburse Lee. If the court vacates the reimbursement order but not the back pay order, says Lee, the court would improperly be substituting its judgment as to an appropriate remedy for the arbitrator's judgment.

This argument rests on a mischaracterization of the arbitrator's decision. The arbitrator did not find that Lee was not responsible for Gonsowski's back pay. The arbitrator found that Lee fired Gonsowski without just cause and ordered Lee to reinstate Gonsowski with back pay. Nothing in the arbitrator's order makes Lee's liability to Gonsowski dependent on the union's payment of reimbursement. The arbitrator did not order the union to pay Gonsowski. Nor did the arbitrator order Lee to pay Gonsowski if the union paid Lee. Rather he simply ordered Lee to pay Gonsowski, and the union to pay Lee. Thus, in enforcing the back pay order but not the reimbursement order we are not substituting our judgment for the arbitrator's. We are enforcing the remedy against Lee that the arbitrator decided was appropriate while vacating a separate remedy against the union that the arbitrator was unauthorized to impose.

Lee finally argues that because the collective bargaining agreement between it and the union expired on May 25, 1990, it should not be responsible for back pay after that date. Cf. *Polk Brothers, Inc. v. Chicago Truck Drivers Union*, 973 F.2d 593, 597–99 (7th Cir.1992) (holding that under the language of the collective bargaining agreement in that case, the arbitrator went beyond his authority by ordering a company to reinstate employees after the agreement expired). Lee, however, never made this argument before the arbitrator or the district court and therefore has waived it. See *National Wrecking*, 990 F.2d at 960; *Ellis*, 849 F.2d at 271.

For the reasons set forth, we affirm the district court's judgment.

AFFIRMED.