FILED
United States Court of Appeals
Tenth Circuit

August 11, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NEWMONT U.S.A. LIMITED,
formerly known as NEWMONT
MINING CORPORATION, and
N.I. LIMITED,

        Plaintiffs-Counter-Claim-
        Defendants-Appellants-
        Cross-Appellees,

      v.

INSURANCE COMPANY OF
NORTH AMERICA,

        Defendant-Counter-
        Claimant-Appellee-
        Cross-Appellant.

Nos. 08-1347 and 08-1370

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:06-CV-1178-ZLW-BNB)**

Mark A. Wielga, Temkin Wielga Hardt & Longenecker LLP, Denver, Colorado
(Nathan M. Longenecker and Jason B. Robinson, Temkin Wielga Hardt &
Longenecker LLP, Denver, Colorado and Robert L. Tofel and Mark A. Lopeman,
Tofel & Partners, LLP, New York, New York with him on the briefs) for
Plaintiffs-Counter-Claim-Defendants-Appellants-Cross-Appellees.

Lloyd A. Gura, Mound Cotton Wollan & Greengrass, New York, New York
(Matthew J. Lasky, Mound Cotton Wollan & Greengrass, New York, New York
and Andrew D. Ringel, Hall & Evans, Denver, Colorado with him on the briefs)
for Defendant-Counter-Claimant-Appellee-Cross Appellant.

Before **TACHA**, **ALARCÓN**[*], and **TYMKOVICH**, Circuit Judges.

———————————

**TYMKOVICH**, Circuit Judge.

———————————

In this insurance matter, Newmont U.S.A. Limited (Newmont), f/k/a Newmont Mining Corporation, and N.I. Limited (NIL) brought suit against the Insurance Company of North America (INA). Newmont sought a declaratory judgment that NIL was no longer liable to INA for reinsurance arising out of policies INA had issued to Newmont, and an injunction barring INA from proceeding to arbitrate the companies' disputes. The district court compelled arbitration and the arbitration panel found in INA's favor, awarding money damages. The district court subsequently modified the portion of the arbitration panel's award concerning post-judgment interest, and entered final judgment.

On appeal, Newmont and NIL argue the district court erred by compelling arbitration. In a cross-appeal, INA contends the district court erred by altering the arbitration panel's post-judgment interest rate determination and setting the post-judgment interest accrual date.

Our jurisdiction arises under 28 U.S.C. § 1291. We find the district court properly compelled arbitration. We also conclude the district court should have applied the post-judgment interest rate set forth in the parties' agreements and

———————————

[*] The Honorable Arthur L. Alarcón, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

incorrectly determined the start date for the accrual of post-judgment interest. Accordingly, we AFFIRM in part and REVERSE in part.

## I. Background

During the early 1980s, INA issued general liability policies to Newmont, the parent corporation of NIL,[1] and certain of its subsidiaries and affiliates. INA and NIL, in turn, entered into three successive reinsurance agreements under which NIL committed to reinsure INA with respect to the policies INA had issued to Newmont. The last effective date of the applicable Reinsurance Agreements was July 18, 1985.

For our purposes, the Reinsurance Agreements may be considered identical. Several provisions of the Agreements are relevant to our analysis of whether and when arbitration may be compelled. Article X of the Reinsurance Agreements provides: "As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration . . . ." Aplt. App. at 22. And, Article XIII of the Reinsurance Agreements states: "Either party will pay to the other an interest charge at the monthly rate of . . . 1.5%[] on any amount that is not paid within the time required by this Agreement, said charge to commence at the time any such

---

[1] At all times relevant to this case, Newmont was the parent corporation and owner of 100 percent of the stock in NIL.

payment is required by this Agreement." *Id.* at 23. Pennsylvania law governs the Reinsurance Agreements.

In the early 1980s, the State of Colorado brought claims against two of Newmont's subsidiaries, the Idarado Mining Company and the Resurrection Mining Company. In response, Newmont filed a declaratory judgment action against INA in state court, seeking defense coverage and indemnity from INA under the general liability policies.

In 1997, INA and Newmont entered into a Settlement Agreement relating to the general liability policies. The Recitals section of the agreement states "this settlement resolves all claims of Newmont for insurance coverage for Idarado Environmental Claims" and "this settlement resolves only Newmont's claims arising from the Idarado mining site and does not settle or resolve Newmont's, or any other entity's, claims arising from the Resurrection mining site or any other site . . . ." *Id.* at 141–42. The 1997 Settlement Agreement also provides:

> INA . . . release[s] [NIL] from all claims . . . relating to the Declaratory Judgment Action . . . , which claims arise from any . . . reinsurance contract with [NIL]. The foregoing to the contrary notwithstanding, this release shall not apply to (I) claims by INA against [NIL] for reinsurance coverage . . . , which claims are based on alleged occurrences at the California Gulch Mining Site [(i.e., the Resurrection Site)] or any other site other than the Idarado Mining Site . . . .

*Id.* at 147–48.

In 2002, INA and Newmont entered into another Settlement Agreement. The Recitals section of that agreement states "this settlement resolves all claims

of Newmont for insurance coverage for Resurrection Environmental Claims" and "the [p]arties intend hereby to compromise, settle and finally resolve their disputes concerning the alleged application of the [general liability] [p]olicies to the Resurrection Environmental Claims . . . ." *Id.* at 160. The 2002 Settlement Agreement also provides:

> INA . . . release[s] [NIL] . . . from all claims . . . relating to the Declaratory Judgment Action . . . , which arise . . . from any . . . reinsurance contract . . . of [NIL].
>
> The foregoing to the contrary notwithstanding, this release shall not apply to (I) claims by INA against [NIL] for reinsurance coverage . . . , on account of alleged occurrences at any site other than the California Gulch Mining Site or the Idarado Mining Site . . . .[2]

*Id*. at 165–66.

Neither Settlement Agreement contains an arbitration provision. Both, however, contain merger clauses. And, both are to be construed according to Colorado law.

In 2000, BHP Copper, Inc., a former Newmont subsidiary, sued INA in state court, seeking coverage under the general liability policies for environmental liabilities at BHP's Pinal Creek Site (the BHP Litigation). INA drew upon a letter of credit from NIL in 2002 to reimburse itself for approximately $439,000 in costs it allegedly incurred defending the BHP Litigation. INA maintained it was due the money under the Reinsurance

---

[2] The Resurrection Environmental Claims relate to the California Gulch Mining Site.

Agreements. In 2005, INA asserted another claim under the Reinsurance Agreements in the amount of approximately $517,000 for additional costs allegedly incurred defending the BHP Litigation. Newmont and NIL challenged INA's draw on the letter of credit and claim for additional reimbursement.

In 2006, INA demanded, under Article X of the Reinsurance Agreements, the parties' dispute over reimbursement be arbitrated. Newmont and NIL responded by filing an action in state court, which was subsequently removed to federal district court, seeking a declaratory judgment that the Settlement Agreements released NIL from reinsurance liability with respect to the BHP Litigation, an injunction barring INA from proceeding to arbitration, and money damages.[3] The district court compelled arbitration.[4]

The arbitration panel issued a final award on December 21, 2007, finding for INA and against NIL in all material respects. The panel found in INA's favor with regard to reimbursement under the Reinsurance Agreements and, based on

---

[3] We note that, based on the terms of the 1997 and 2002 Settlement Agreements, Newmont has standing as the promisee to enforce those agreements on behalf of NIL, the third-party beneficiary of those agreements. *See In re Kaplan*, 143 F.3d 807, 813 (3d Cir. 1998) (noting that both a promisee and the third-party beneficiary may sue to enforce a contract); *Cody Park Prop. Owners' Ass'n, Inc. v. Harder*, --- P.3d ---, 2009 WL 4070874 at *3 (Colo. App. 2009) ("The intent to benefit a third party need not be expressly referred to in the agreement, but must be apparent from the terms of the agreement or the surrounding circumstances.").

[4] The district court stayed Newmont and NIL's action pending the completion of arbitration.

Article XIII of the Reinsurance Agreements, provided for pre- and post-judgment interest at the rate of 1.5 percent per month.

The district court entered final judgment on September 19, 2008, *nunc pro tunc* June 5, 2008. Citing 9 U.S.C. § 11(b), the district court modified the arbitration panel's award with respect to post-judgment interest, ordering that the post-judgment interest rate be set in accordance with 28 U.S.C. § 1961, rather than at the contract amount of 1.5 percent per month. In this instance, § 1961 provided a lower interest rate than the contract. The district court also ordered that post-judgment interest begin to accrue after June 5, 2008.

Newmont and NIL appeal the district court's decision to compel arbitration, arguing that the Settlement Agreements released NIL from reinsurance and arbitration obligations existing under the Reinsurance Agreements. INA appeals the district court's rulings setting the post-judgment interest rate in accordance with § 1961 and establishing June 5, 2008 as the post-judgment interest accrual date. INA contends the interest rate the arbitration award provided should be applied and that the accrual date should be the date judgment was entered, September 19, 2008.

## II. Discussion

The district court's granting of a motion to compel arbitration is reviewed de novo, *see Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998), as is the district court's interpretation and application of § 1961,

*see Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1003 (10th Cir. 2005). "In reviewing [the] district court's confirmation of an arbitration award, we review factual findings for clear error and legal determinations de novo." *DMA Int'l, Inc. v. Qwest Commc'ns Int'l, Inc.*, 585 F.3d 1341, 1344 (10th Cir. 2009). With respect to the factual averments made in Newmont and NIL's complaint, because the district court rendered its decision on the pleadings, we must accept them as true for purposes of this appeal. *See Riley*, 157 F.3d at 779.

A. Arbitration

Newmont and NIL first challenge the district court's decision to compel arbitration. They contend the district court improperly determined the reimbursement issue is within the scope of the arbitration clause contained in the Reinsurance Agreements and that the clause survived the expiration of those contracts and the entry into force of the Settlement Agreements. We disagree.

Our cases hold unless the parties to an agreement "clearly and unmistakably" provide otherwise, "the question of arbitrability—whether a contract creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* (internal punctuation omitted). Here, we cannot conclude INA and Newmont clearly and unmistakably provided that an arbitration panel, rather than a court, decide issues of arbitrability relating to the Reinsurance Agreements. The agreements are completely silent on the issue. Given the lack of contractual guidance, we look to

the district court to handle the question of whether the parties' dispute concerning the BHP Litigation is arbitrable.

Second, in deciding if a dispute is arbitrable, a court must initially determine whether the arbitration provision is broad or narrow. *See Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005). "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal quotation marks omitted). Looking to the plain language of the arbitration provision contained in the Reinsurance Agreements, including its use of the phrase "arising out of," we have little trouble determining that it is a broad provision.[5] We find therefore the arbitration provision pertaining to the Reinsurance Agreements covers the parties' dispute. In reaching this conclusion, we bear in mind that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983).

-----

[5] Generally, when an arbitration provision provides for any dispute "arising out of" a particular contract, the provision is construed broadly to suggest that a given dispute is arbitrable. *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 330 (E.D. Pa. 2004) (addressing an agreement in accordance with the Federal Arbitration Act and Pennsylvania law); *see also Williams v. Imhoff*, 203 F.3d 758, 765–66 (10th Cir. 2000) ("[W]e believe [the phrase, 'arising out of,'] must be broadly construed to mean 'originating from,' 'growing out of,' or 'flowing from.'").

Third, an arbitration clause in a contract is presumed to survive the expiration of that contract. This presumption might be overridden given some express or clearly implied evidence that the parties intended to override that presumption, or the relevant dispute cannot be said to have arisen under the previous contract. *See Riley*, 157 F.3d at 781. A dispute "arises under" a previous contract if it involves rights that to some degree vested or accrued during the life of the contract and merely ripened after expiration, or relates to events that occurred at least in part while the contract was still in effect. *See id.*

Here, the Settlement Agreements do not evidence the parties' express or clearly implied intent to repudiate post-expiration arbitrability. An examination of the Settlement Agreements in their entirety reveals that they were intended to resolve claims relating to the Idarado and Resurrection sites only—claims concerning reinsurance coverage for the BHP Litigation were not released.[6] Also, there can be no doubt that the parties' dispute over the BHP Litigation "arose

---

[6] Under Colorado law, in determining the meaning of a contract, courts must analyze the entire instrument and not view provisions or phrases in isolation. *See Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008). "Recitals . . . cannot extend contractual stipulations, [but] they may have material influence on the construction of the instrument . . . ." *Engineered Data Prods., Inc. v. Nova Office Furniture, Inc.*, 849 F. Supp. 1412, 1417 (D. Colo. 1994) (discussing Colorado law). Also, "while every relevant provision must be considered and given effect, a more specific provision controls the effect of general provisions." *Level 3*, 535 F.3d at 1154 (internal quotation marks omitted). Further, absent indication by the parties to the contrary, a contract's language must be construed in accordance with the plain meaning of the words used. *See id.*

under" the Reinsurance Agreements. The BHP Litigation dispute concerns rights that vested and events that took place, at least in part, while the Reinsurance Agreements were in effect.

The arbitration provision in the Reinsurance Agreements encompasses the parties' dispute concerning the BHP Litigation and neither the Reinsurance Agreements' expiration nor the Settlement Agreements extinguish arbitrability. Accordingly, the district court did not err in compelling arbitration.

### B. Post-Judgment Interest Rate

INA contends the district court erred by altering the post-judgment interest rate provided in the arbitration panel's final award. The district court replaced the post-judgment interest rate the arbitration panel established with the rate set forth in § 1961. In doing so, the district court modified the arbitration panel's award pursuant to § 11(b) on the understanding that it could modify the arbitration award where the arbitration panel awarded upon matters not submitted for arbitration. *See* 9 U.S.C. § 11(b). INA argues the district court's alteration of the arbitration award based on § 11(b) was in error because the arbitration panel had the authority to decide the post-judgment interest issue. We agree.

As discussed above, a broad arbitration clause gives rise to the presumption of arbitrability and arbitration of a collateral matter will be ordered if it implicates issues of contract construction or the parties' contractual rights and obligations. *See Cummings*, 404 F.3d at 1261. Doubts about the arbitrability of

-11-

an issue should to be resolved in favor of arbitration. *See Mem'l Hosp.*, 460 U.S. at 25. In addition, we are reminded that, "[o]nce an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." *DMA*, 585 F.3d at 1344 (internal quotation marks omitted); *see also LB&B Assocs., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 113*, 461 F.3d 1195, 1197 (10th Cir. 2006) ("Whether the arbitrator's reading of the agreement was strained or even seriously flawed is irrelevant. As long as the arbitrator is even arguably construing . . . the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.") (internal quotation marks, alterations, and citation omitted).

Here, as we have already determined, the arbitration provision contained in the Reinsurance Agreements is a broad provision. Also, because parties may set their own rate of post-judgment interest through contract, *see Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101 (2d Cir. 2004) (cited favorably in *Reinhart*, 402 F.3d at 1004), determining the rate of post-judgment interest to be applied to the money damages the arbitration panel awarded implicates Article XIII of the Reinsurance Agreements. Article XIII provides for an interest rate of 1.5 percent per month on any amount due under the Reinsurance Agreements. *See* 3 THOMAS H. OEHMKE, COMMERCIAL ARBITRATION § 124:2 (2010) ("Parties may 'contract out' of statutory interest rates if their agreement expresses the parties'

-12-

intent to deviate from a post-judgment interest rate set by statute. Arbitrators

must honor an agreement as to the amount of interest on an award . . . .”). And

nothing in the Reinsurance Agreements purports to limit the arbitration panel’s

authority to decide post-judgment interest issues.[7]   Accordingly, we find that the

matter of post-judgment interest was properly before the arbitration panel. *See*

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599

(1960) (“It is the arbitrator’s construction which was bargained for . . . .”); *see*

*also Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am.*,

896 F.2d 745, 747 (3d Cir. 1990) (“[Because] the parties have bargained for the

arbitrator’s decision, it is the arbitrator’s view of the facts and of the meaning of

the contract that they have agreed to accept.”) (internal quotation marks omitted).

Neither § 1961 nor caselaw directs a different conclusion. An agreement to

apply a post-judgment interest rate other than that § 1961 specifies is enforceable

so long as the parties indicate their intent to override the statute using “clear,

unambiguous and unequivocal language.” *Reinhart*, 402 F.3d at 1004. The

parties’ intent is a quintessential fact question, and we see no reason why an

arbitration panel with authority to decide a contractual dispute cannot also

---

[7] We also note the fact that the parties made arguments before the arbitration panel concerning Article XIII and the post-judgment interest issue further supports our conclusion the arbitration panel was authorized to address the issue. *See*, *e.g.*, *Carpenter Local No. 1027, Mill Cabinet-Indus. Div. v. Lee Lumber and Bldg. Material Corp.*, 2 F.3d 796, 799 (7th Cir. 1993) (“[T]he agreement to arbitrate a particular issue may be implied from the parties’ conduct, including their actual litigation of that issue.”).

determine whether the contract in question includes language clearly, unambiguously, and unequivocally stating the parties' intent to bypass § 1961. *See Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220 (10th Cir. 2005) (quoting *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146 (10th Cir.1982), for the proposition that, when parties agree to submit a dispute to arbitration, it is presumed that the arbitrator is authorized to determine all issues of law and fact necessary to resolve the dispute). "While [§ 1961] employs mandatory language, . . . this is aimed mainly at precluding district courts from exercising discretion over the rate of interest or adopting an interest rate set by arbitrators, not at limiting the ability of private parties to set their own rates through contract." *See D'Urso*, 371 F.3d at 101. Consistent with § 1961, an arbitration panel may not establish a post-judgment interest rate itself, but it may determine whether the parties have sufficiently contracted for their own rate and, if they have, indicate that rate should be applied.

Because the post-judgment interest issue was arbitrable under the Reinsurance Agreements, the arbitration panel had the authority to determine the issue. The district court therefore erred by modifying the final award based on § 11(b).

C.  Interest Accrual Date

The last issue involves the applicable date interest begins accruing.  INA contends the district court erred by fixing June 5, 2008 as the date after which post-judgment interest should begin to accrue.  We agree.  In this case, § 1961 mandates a post-judgment interest accrual date of September 19, 2008.

Section 1961 provides the statutorily determined post-judgment interest rate goes into effect on the date of the entry of judgment.  *See* 28 U.S.C. § 1961 ("Such interest shall be calculated from the date of the entry of the judgment . . . .").  Judgment is entered when the district court files a separate document in accordance with Rule 58 of the Federal Rules of Civil Procedure. *See Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1146 (10th Cir. 2008); *see also Hull v. United States*, 971 F.2d 1499, 1507–09 (10th Cir. 1992) (holding the district court's *nunc pro tunc* order establishing an earlier date as the relevant judgment date for purposes of § 1961 was invalid because the district court had not satisfied Rule 58 prior to issuing its *nunc pro tunc* order).  Here, judgment was not entered in accordance with Rule 58 until September 19, 2008. Consequently, the district court's Judgment, dated September 19, 2008, *nunc pro tunc* June 5, 2008, did not establish June 5, 2008 as the date of the entry of judgment for purposes of § 1961.

The district court thus erred in identifying June 5, 2008 as the post-judgment interest accrual date.  The district court should have identified

-15-

September 19, 2008—the date on which a valid judgment was entered—as the date of accrual.

### III. Conclusion

For the foregoing reasons, we find the district court rightly compelled arbitration, but erred by modifying the post-judgment interest rate and in setting the post-judgment interest accrual date. We AFFIRM in part and REVERSE in part.